**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JENNIFER D.,**[1]<br><br>　　　**Plaintiff,**<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　**Defendant.** | Case No. 23–cv–12320–ESK<br><br><br>OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff Jennifer D.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying plaintiff's application for Social Security Disability Insurance Benefits (ECF No. 3–2 pp. 19–34). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

**I.　BACKGROUND**

Because the record is voluminous, I set forth only those facts that are necessary for context and are relevant to the issues on appeal.

On December 10, 2017, plaintiff filed her application for benefits, alleging disability on multiple impairments, including "depression, anxiety, [post-traumatic stress disorder], fibromyalgia, [irritable bowel syndrome], mood disorder, Hashimoto's, and back pain." (ECF No. 3–3 pp. 17, 18.) The application was denied initially and on reconsideration. (ECF No. 3–4 pp. 5–9,

---

[1] Due to the significant privacy concerns in Social Security cases, any nongovernmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

11–13.) On October 18, 2019, an Administrative Law Judge (ALJ) held a hearing at which plaintiff and a vocational expert testified. (ECF No. 3–2 pp. 41–72.) In a decision dated January 2, 2020, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act (Act) from her alleged disability onset date of May 17, 2017 through June 30, 2018, the date on which plaintiff was last insured. (ECF No. 3–3 pp. 36–59.)

The Appeals Council vacated that January 2020 decision and remanded the case, directing the ALJ to "[c]onsider the issue of the disability beginning with the alleged onset date … through the earlier of the hearing date or [September 30, 2020,] the updated date last insured." (*Id.* pp. 66, 67.) On February 7, 2022, the ALJ held another hearing at which plaintiff and a different vocational expert testified. (ECF No. 3–3 pp. 72–103.) In a decision dated July 29, 2022, the ALJ again concluded that plaintiff was not disabled within the meaning of the Act. (ECF No. 3–2 pp. 19–24.) On July 25, 2023, the Appeals Council denied plaintiff's request for review, making the July 2022 decision the Commissioner's final decision.

## II. LEGAL STANDARD

### A. Standard Governing Benefits

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§404.1520(a)(4)(i), 416.920(a)(4)(i). If [the claimant] is, [the claimant] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [the claimant] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [the claimant] has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations" [(Listings)]. *Smith*, 631 F.3d at 634. If the claimant's impairments do, [the claimant] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If [the claimant does] not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether he can perform his [or her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform … past relevant work despite [the claimant's] limitations, [the claimant] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [the claimant] cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [the

3

claimant] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If [the claimant] cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### B. Standard of Review

When reviewing an ALJ's final decision as to disability benefits, the Court exercises plenary review and reviews factual findings for "substantial evidence." *See* 42 U.S.C. §1383(c)(3); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir.1971)).

"[E]ven if [the Court] would have decided the factual inquiry differently," the ALJ's decision may not be set aside if it is supported by substantial evidence. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (holding that when reviewing an ALJ's decision, the Court "weigh the evidence or substitute its conclusions for those of the fact-finder"). While the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006).

### III. THE ALJ DECISION

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity. (ECF No. 3–2 pp. 21, 22.)

At step two, the ALJ determined that plaintiff had the following severe impairments: obesity, fibromyalgia, major depressive disorder, anxiety disorder, bipolar disorder, attention deficit hyperactivity disorder, gastroenteritis, asthma, and chronic obstructive pulmonary disease. (*Id.* p. 22.) The ALJ further concluded that plaintiff's sleep apnea, irritable bowel syndrome, urinary incontinence, and Hashimoto's thyroiditis were non-severe impairments because "[t]here is no indication in the record of the need for invasive modalities" and that "[t]here is no probative evidence that [these] impairments more than minimally affect[] the [plaintiff's] ability to perform basic work functions." (*Id.* pp. 22, 23.) Before proceeding to step three, the ALJ noted that all of plaintiff's impairments—severe and non-severe—were considered in assessing plaintiff's RFC. (*Id.* p. 23.)

At step three, the ALJ considered various Listings and determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity" of any of the impairments listed by the regulations. (*Id.* pp. 23–26.)

At step four, the ALJ concluded that plaintiff had the RFC to perform sedentary work, with certain exceptions. (*Id.* pp. 27–32). "Sedentary work" involves "lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* As to the exceptions, the ALJ found that plaintiff: (a) was limited to lifting and/or carrying ten pounds; (b) could "never climb ladders, ropes, or scaffolds"; (c) occasionally climb ramps and stairs, balance, bend,

stoop, kneel, crouch, and crawl but can never work at unprotected heights; (d) could engage in "simple repetitive work at a constant pace "but not at a production rate pace where each task must be completed within a struct time deadline." (*Id.*) Based on the record, the ALJ determined that while plaintiff had past relevant work, she can no longer perform such work "as actually or generally performed." (*Id.* pp. 29, 30).

At step five, the ALJ considered plaintiff's background, RFC, and vocational expert testimony to determine that "there were jobs that existed in significant numbers in the national economy" that plaintiff could perform, including work as a: (a) document preparer (about 35,000 jobs in the national economy); (b) order clerk (about 40,000 jobs in the national economy); and (c) scale operator (about 50,000 jobs in the national economy). (*Id.* pp. 33, 34.) Accordingly, the ALJ found that plaintiff was not disabled as defined by the Act. (*Id.* p. 34.)

### IV. DISCUSSION

Plaintiff argues that the ALJ's determination should be reversed and remanded because: (1) at step two, the ALJ failed to find certain impairments as severe; and (2) the ALJ gave improper weight to the opinions of Dr. Anan Haija and Dr. Leslie Madrak. (ECF No. 10 (Mov. Br.) pp. 19–31.) The Commissioner opposes, arguing that the ALJ's decision is supported by substantial evidence. (ECF No. 14.) In further support of her position, plaintiff filed a reply brief. (ECF No. 16.)

Since plaintiff is challenging whether her impairments amount to a qualifying disability under the first four steps of the sequential evaluation process, she bears the burden of demonstrating that not only did the ALJ err, but that the error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) (holding that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987).  In other words, plaintiff bears the burden of demonstrating that but for the error, she might have proven her disability. *See Shinseki,* 556 U.S. at 409–10.  If plaintiff cannot articulate, based on the existing record, the basis for a decision in her favor, then she is unlikely to show that an error was harmful.  *See id.*

### A. Step Two

Plaintiff argues that the ALJ failed to properly consider the severity of several of her physical impairments and failed to consider the impairments designated as non-severe when assessing her RFC.  (Mov. Br. pp. 19–25.)  In particular, plaintiff argues that the non-severity "determination specific to [her] urinary incontinence is flawed" because "a review of the record demonstrates" that the ALJ's findings are "factually incorrect."  (*Id.* p. 20.)  Plaintiff notes that in contrast to the ALJ's finding, she "has been treating her urinary incontinence since August 2020" and has "underwent multiple forms of treatment."  (*Id.* p. 21.)  Plaintiff indicates that she has had to resort to adult diapers, and given that medications have been unsuccessful, she was interested in treatment with Botox injections.  (*Id.* pp. 20, 21; ECF No. 3–8 p. 111, 127, 129.)  Without pointing to any evidence in the record, plaintiff asserts "[t]he same applies to [her] Hashimoto's and irritable bowel syndrome" and that "despite finding … [p]laintiff's asthma and chronic obstructive pulmonary disease to be severe medically determinable impairments, the RFC is silent for limitations consistent with the same."  (*Id.* pp. 21, 24.)

The Third Circuit has held that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003).  As such,

> [a]n impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an

7

>individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *6-8. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. *See Bowen*, 482 U.S. at 158. If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater*, 80 F.3d 1290 (9th Cir. 1996). Reasonable doubts on severity are to be resolved in favor of the claimant.

*Id.*; accord *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (holding "[t]he burden placed on an applicant at step two is not an exacting one," but that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant").

Regardless of whether the ALJ erred by designating some of plaintiff's impairments as severe, the key question here is whether plaintiff has sufficiently demonstrated that she was harmed by this error. I find that plaintiff has failed to do so. *See* Fed.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.") The ALJ found that plaintiff suffered from nine severe impairments and five non-severe impairment. (ECF No. 3–2 pp. 22, 23.) Had the total count of severe impairments been greater, it would not have made any difference to the outcome. *See Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013) (noting that "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two"); *Williams v. Comm'r of Soc. Sec. Admin.*, No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (finding that "if the ALJ finds in a plaintiff's favor at step two, 'even if [the ALJ] had erroneously concluded that some of [the plaintiff's] other impairments were

8

non-severe, any error [is] harmless'" (quoting *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007))).

As to plaintiff's urinary incontinence and related gastroenterology-related issues, plaintiff explained during the February 2022 hearing that she stopped working in 2017 because she "was having a lot of health issues" and "was put on disability." (ECF No. 3–2 p.84.) Plaintiff alleges that it was at that time that she was diagnosed with irritable bowel syndrome and could not control herself from going to the bathroom, so much so that she was relying on adult diapers. (*Id.*) At the hearing, plaintiff indicated that between the hours of a 9 a.m. to 5 p.m. work day, she uses the bathroom six to seven times for anywhere between five to 15 minutes. (*Id.* pp.84, 85.) Most of the references in the record to plaintiff's urinary frequency do not describe how often and how long plaintiff must use the restroom, and the few specifics that are contained in the record, which the ALJ expressly referenced, do not specifically support a finding of a severe limitation. *See* (ECF No. 3–2 pp.21–30.) *Cf. Williams v. Comm'r of Soc. Sec.*, No. 18–13465, 2019 WL 4574502 at *2, 3 (D.N.J. Sep. 20, 2019) (reversing and remanding the action because the ALJ "simply said nothing about[the] evidence" relating to plaintiff's overactive active bladder). Similarly, plaintiff's qualms with the other impairments the ALJ found non-severe and the ALJ's analysis of her asthma and chronic obstructive pulmonary disease (*see* Mov. Br. pp.21, 24) are merely cursory and not supported by any evidence that the ALJ may have failed to consider.

The ALJ's decision is thus supported by substantial evidence and contains sufficient discussion of the evidence and explanation of reasoning to enable meaningful review. *See Wellington W. v. Kijakazi*, No. 22-05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record."); *Jose S. v. Kijakazi*, No.

9

19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) (finding that the ALJ's discussion of the objective medical evidence "indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record'").

### B.   Weight of Medical Experts

Plaintiff next challenges the ALJ's treatments of the medical opinions of Dr. Haija and Dr. Madrak. (Mov. Br. pp.25–31.)  Plaintiff argues that "[w]hile the ALJ cites to medical evidence to support her findings, [the ALJ] ignored other significant portions of the medical evidence." (*Id.* p.28.)  In particular, plaintiff notes that as to Dr. Madrak, her treating psychiatrist, the ALJ only cited to two medical notes and disregarded the symptoms she reported. (*Id.* p.29.)  As to Dr. Haija, plaintiff's rheumatologist, plaintiff similarly argues that the ALJ erred when rejecting his opinion as inconsistent with orthopedic findings. (*Id.*)  Plaintiff argues that because Dr. Haija and Dr. Madrak were "treating source[s]," they were entitled to "more weight." (*Id.*)

For claims filed on or after March 27, 2017, the "treating source rule" has been eliminated.  20 C.F.R. §404.1520c(b)(2).  Under this new regulation, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), [] including those from [the plaintiff's own] medical sources."  20 C.F.R. §404.1520c(a).  Instead of assigning weight to medical opinions, the ALJ now considered the persuasiveness of a medical opinion or finding.  *Id.* Consistent with this regulation, the ALJ provided an analysis of the opinions submitted by Dr. Haija and Dr. Madrak.  (ECF No. 3–2 pp.30–32.)

While "an ALJ must clearly set forth the reason for his [or her] decision" and "provide a 'discussion of the evidence,'" there are no "magic" words the ALJ must use.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (first

quoting *Burnett v. Comm's of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (second quoting *Jones*, 364 F.3d at 505). The ALJ discussed Dr. Haija and Dr. Madrak's medical opinions in detail and in summarizing their content, the ALJ explained that neither doctor's report was well-supported by the referenced objective evidence. For example, while Dr. Haija stated that plaintiff would be off task for 25% of the workday, Dr. Haija supported this opinion by noting plaintiff's need to lie down or recline and her difficulty focusing. As the ALJ noted, plaintiff's physical examination demonstrated that plaintiff had no tenderness of the extremities, walked with a normal fair, and had full motor strength, normal coordination and range of motion. (ECF No. 30–2 pp. 30, 31.) The ALJ similarly noted that Dr. Madrak's own treatment notes and examinations failed to support plaintiff's limitations. (*Id.* pp. 31, 32.) While Dr. Madrak opined that plaintiff has a limited concentration span and that her anxiety impairs her ability to respond to changes in work settings, upon reviewing Dr. Madrak's reports, the ALJ determined that these findings were inconsistent with a finding of extreme mental functional limitation. (*Id.*) Beyond reiterating what Dr. Haija's and Dr. Madrak's reports stated, plaintiff fails to establish how she was harmed by any errors.

## V.   CONCLUSION

For the reasons stated above, the Commissioner's decision denying plaintiff's application for benefits is **AFFIRMED**.

                                             */s/ Edward S. Kiel*
                                             **EDWARD S. KIEL**
                                             **UNITED STATES DISTRICT JUDGE**

Dated: November 27, 2024